UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    v.<br><br>MARLO FERRO (3),<br><br>    Defendant. | Criminal Action No. 24-417-3 (CKK) |

**MEMORANDUM OPINION & ORDER**
(June 3, 2025)

On May 13, 2025, Defendant Marlon Ferro was arrested in California on the [50] Superseding Indictment in this case. At a hearing before Magistrate Judge Douglas McCormick of the Central District of California, the Government moved to detain Ferro pending trial. Magistrate Judge McCormick denied the Government's motion and ordered Ferro released subject to conditions. Ferro has now appeared before this Court and is on release subject to the conditions imposed by Magistrate Judge McCormick. *See* Release Order, ECF No. 89.

On May 15, the Government filed in this Court a [67] Motion for *De Novo* Review of Magistrate Judge McCormick's Release Order requesting that Ferro be detained pending trial. Ferro opposed the Government's motion. Def.'s Resp., ECF No. 97. And the Government filed a reply in support of its motion. Gov't's Reply, ECF No. 98. After reviewing the parties' briefing, the Court ordered the Pretrial Services Agency for the District of Nevada to conduct further evaluations. Order, ECF No. 101. And the Court has now received the resulting report. *See* Pretrial Compliance Report, ECF No. 126.

For the reasons that follow, the Court shall **GRANT** the Government's request for *de novo* review, **DENY** the Government's request that Ferro be detained pending trial, and **ORDER** that Ferro's conditions of release be **MODIFIED** as described herein.

1

**I.**

The Bail Reform Act provides that if a defendant is ordered released by a magistrate, "the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order." 18 U.S.C. § 3145(a). The U.S. Court of Appeals for the D.C. Circuit has "not squarely decided" the standard of review for such motions. *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021). But every other circuit to address the question has held that the district court's review is *de novo*. *See United States v. Chrestman*, 525 F. Supp. 3d 14, 23 & n.5 (D.D.C. 2021) (BAH) (collecting cases). And this Court has adopted that position. *See United States v. Brown*, No. 23-cr-73, 2023 WL 7017750, at *1 (D.D.C. Oct. 25, 2023) (CKK).

On *de novo* review, the question for the Court is whether any "condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019). That inquiry is guided by the Bail Reform Act's familiar four-factor test, under which the Court must consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

"To justify detention on the basis of dangerousness, the government must prove by 'clear and convincing evidence' that 'no condition or combination of conditions will reasonably assure the safety of any other person and the community.'" *Munchel*, 991 F.3d 1273, 1279–80 (D.C. Cir. 2021) (quoting 18 U.S.C. § 3142(f)). Although the statute is silent as to the level of proof required to establish risk of flight, the D.C. Circuit has held that such a finding need only be supported by a "preponderance of the evidence." *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987).

**II.**

The Government argues Ferro must be detained both because he is a flight risk and because he presents a danger to the community. Gov't's Mot. at 1. The Court begins by surveying the Section 3142(g) factors.

**A. The Nature of the Charged Offenses**

Ferro is charged with participation in a RICO conspiracy, in a conspiracy to commit wire fraud, and in a conspiracy to launder monetary instruments. *See* Superseding Indictment, ECF No. 50. These conspiracies are sprawling in scope. Beginning in 2023, the conspirators are alleged to have orchestrated a series of social engineering schemes, frauds, and even a home invasion to steal huge sums of cryptocurrency from unwitting victims across the country. The Government alleges that the conspirators then used a sophisticated international network to launder the stolen cryptocurrency into fiat currency, with which they made increasingly lavish luxury purchases.

The Government alleges that Ferro joined the conspiracy in early 2024 as a money launderer and burglar. *See* Superseding Indictment at 9, 16. Ferro allegedly worked with a Latvian national to establish a digital payment card for his coconspirators through a company that is geo-blocked in the United States by using fraudulent know-your-customer documents. *Id.* at 20; Gov't's Mot. at 3. Ferro then allegedly agreed to accept transfers of stolen cryptocurrency into an account associated with the card and shared the card with members of the conspiracy so they could spend stolen funds in brick-and-mortar stores. Superseding Indictment at 20.

The Government also alleges that in July 2024, Ferro conspired with others to plan and execute a burglary. Gov't's Mot. at 2. While others monitored the victim's location by hacking the victim's iCloud account, Ferro threw a brick through the back window of the victim's unoccupied home and stole a physical hard drive containing cryptocurrency. *Id.*

3

Finally, the Government alleges that Ferro maintained an active role in the conspiracy even after the arrest of his codefendant Malone Lam. Gov't's Mot. at 7. In particular, the Government alleges that Ferro served as a go-between, coordinating communications between Lam and other conspirators. *Id.* Ferro allegedly arranged for other conspirators to transfer stolen cryptocurrency to fund Lam's legal defense and luxury purchases for Lam's girlfriend. *Id.* at 7–8.

### B. The Weight of the Evidence

The evidence against Ferro is weighty. The Government has provided dozens of Ferro's digital communications discussing his role in the conspiracy. *See* Gov't's Mot. at 4–8. And the Government has provided a screenshot of a home security camera allegedly showing Ferro breaking into a victim's home. *Id.* at 3.

### C. Ferro's History and Characteristics

Ferro is 19 years old. He has no criminal record. He was raised in Las Vegas, Nevada by his mother and stepfather. And his grandmother resides roughly 20 minutes from his mother's home. After graduating high school in Nevada, he moved to California where he resided alone in a luxury apartment. Ferro reported to Pretrial Services in California that he has never been employed and has no assets. Ferro also reported that he has traveled abroad to Canada, the United Kingdom, and Cuba—where he was born.

When the Government searched Ferro's apartment, they seized a fake New York ID, a bag of marijuana, and a bag of orange pills that appeared to be Adderall. Gov't's Mot. at 9.

Finally, the Court pauses to note the demeanor revealed by the messages from Ferro proffered by the Government. Ferro lamented that other members of the conspiracy lacked discipline. *See* Gov't's Mot. at 4. And he boasted that other members were not "as deep in" the conspiracy as he and Malone Lam. *Id.* at 6–7.

**D. Danger to the Community**

The Government argues Ferro poses a danger to the community for three principal reasons. First, Ferro is unique among his codefendants in that he is alleged to have committed a physical, real-world burglary rather than only offending online. Second, he continued contacting Malone Lam and transferring money on Lam's behalf after Lam's arrest and detention, suggesting that he was not deterred by the instant prosecution. And third, Ferro had access to firearms. The Government seized two firearms from Ferro's apartment, one of which bears a U.S. Marine Corps serial number and which the Government suggests without further detail "was certainly obtained illegally." Gov't's Reply at 1. The Government also proffers that witnesses will testify that Ferro claimed to purchase firearms from his codefendant Kunal Mehta and that Ferro offered to purchase firearms for other of his codefendants from Mehta. *Id.* at 2; Gov't's Suppl., ECF No. 99 at 1.

**III.**

Although a close question, the Court concludes on the present record that a combination of restrictive conditions of release can ensure that Ferro will appear for proceedings and will not endanger the safety of the community. *See* 18 U.S.C. § 3142(c)(1).

Ferro faces serious charges with lengthy potential penalties. And the evidence the Government has proffered against him appears weighty. Together, these factors suggest that Ferro has a significant incentive to flee. Further, the Court is troubled by Ferro's self-assessment as a core member of the conspiracy, his continued engagement with Malone Lam after Lam's arrest, and his alleged role in the distribution of firearms among the conspirators.

Since his initial appearance before this Court, Ferro has been released subject, in relevant part, to the conditions that he:

- Surrender his passport;
- Post a $30,000 bond;

- Report to Pretrial Services in the District of Nevada;

- Possess only those digital devices and online accounts approved by Pretrial Services, subject those devices and accounts to monitoring by Pretrial Services, refrain from using a VPN, and refrain from contacting alleged coconspirators; and

- Possess only one cryptocurrency wallet, refrain from transfers of assets valued at $10,000 or more without permission, and submit to searches to verify compliance.

*See* Release Order, ECF No. 89. Ferro has since been residing in his mother's home in Las Vegas.

After reviewing the parties briefing, the Court directed Pretrial Services to assess the suitability of Ferro's mother's home for home incarceration and to assess the availability of an appropriate third-party custodian. Order, ECF No. 101. Pretrial Services reported that Ferro's mother's home is suitable for home incarceration. *See* Pretrial Compliance Report, ECF No. 128. Ferro's mother owns the home and is eligible to serve as a third-party custodian. *Id.* Although Ferro's mother works outside the home on most weekdays, Ferro's grandmother lives nearby, is eligible to serve as a third-party custodian, and has expressed willingness to do so. *See id.*

On the present record, the Court concludes that Ferro may remain on release on all his current conditions *and* the additional condition that he be subjected to home incarceration in his mother's home and location monitoring under the third-party supervision of his mother and grandmother.

Although Ferro has incentive to flee, the Court cannot conclude by a preponderance of the evidence that Ferro will not appear for proceedings while under restrictive conditions of release. The Government has seized Ferro's passport, and he has only a limited history of international travel. Subjecting Ferro to location monitoring and home incarceration further diminishes the risk that he will flee. And nothing in the record suggests that Ferro can access any significant sum of money to facilitate his clandestine flight while subject to the device monitoring initially ordered

by Magistrate Judge McCormick.  The Court has also confirmed with Pretrial Services for the District of Nevada that such monitoring can continue in Nevada.

The Court also concludes that the Government has not carried its burden of proving the need for detention on the basis of dangerousness by clear and convincing evidence.  On the present record, the Court views the relevant evidence as in equipoise.  Although the Court is troubled by Ferro's prior access to firearms, the present record suggests that Ferro's codefendant Kunal Mehta was the source of those firearms.  And the Court has ordered Mehta detained pending trial.  *See* Mem. Op. & Order, ECF No. 137.  Further, the risk that Ferro will engage in criminal conduct while on release can be managed through device monitoring and home incarceration.

Most significant to the Court's determinations on flight risk and dangerousness are the change in circumstances occasioned by Ferro's arrest and the role of Ferro's mother.  It appears from the present record that the bulk of Ferro's alleged offense conduct occurred while he was living alone and away from home in California for the first time in his life.  Ferro will now reside in Nevada, in his mother's home, and in a place where he has significant community ties.  Given Ferro's youth and lack of criminal history, the Court is persuaded that a return to a familiar environment will dissuade future wrongdoing.

Notably, following Ferro's arrest in California, Ferro's mother drove him across the country on short notice to attend his initial appearance before this Court.  That act inspires confidence that Ferro will be well-supervised while subject to home incarceration in Nevada.

On the present record, the Court concludes that the additional restrictive conditions of location monitoring and home incarceration under the supervision of Ferro's mother and grandmother can suffice to ensure Ferro's appearance and the safety of the community.

The Court will revisit that conclusion should circumstances change.

## IV. CONCLUSION & ORDER

For the foregoing reasons, and on the present record, it is hereby:

**ORDERED** that the Government's Request for *De Novo* Review is **GRANTED**;

**ORDERED**, upon *de novo* review, that the Government's request that Ferro be detained pending trial is **DENIED**; and further

**ORDERED** that Ferro's conditions of release be **MODIFIED** to include the additional conditions that he be subjected to location monitoring and home incarceration at his mother's residence under the third-party supervision of his mother and grandmother.

**SO ORDERED.**

**Dated:** June 3, 2025

*/s/ Colleen Kollar-Kotelly*
COLLEEN KOLLAR-KOTELLY
United States District Judge