IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | Docket No. 1:24-cr-417-003 (CKK) |
| ) | Sentencing hearing: April 2, 2026 |
| MARLON FERRO  ) | |
| Defendant  ) | |

## DEFENDANT'S POSITION ON SENTENCING

Marlon Ferro comes before the Court for sentencing in a case in which he has accepted full responsibility for his actions. On October 17, 2025, Mr. Ferro pled guilty to count 1 of the Superseding Indictment, pursuant to a written plea agreement, charging him with RICO conspiracy, in violation of 18 U.S.C. § 1962(d). Mr. Ferro assisted the government in its prosecution of his misconduct, timely notified authorities of his intention to plead guilty, and now stands ready to accept the consequences of his conduct.

Pursuant to 18 U.S.C. § 3553(a), Rule 32 of the Federal Rules of Criminal Procedure, and Section 6A1.3 of the advisory United States Sentencing Guidelines, Mr. Ferro, by and through counsel, states that he has received and reviewed the Presentence Investigation Report ("PSR") prepared in this case. He submits that the guideline calculations in the PSR are accurate with a total base offense of 28 and criminal history category of I with a corresponding advisory guideline range of 78 – 97 months.

## SENTENCING RECOMMENDATION

For the reasons stated below, Mr. Ferro respectfully asks the Court to impose a sentence of imprisonment of 60 months followed by a two-year term of supervised release (a variance downward from the sentencing guidelines).

## LEGAL STANDARD

The fundamental requirement of a federal sentence is to be "sufficient, but not greater than necessary, to comply with the purposes" set forth in § 3553(a). The factors to be considered by the district court in determining the appropriate sentence are as follows: the nature and circumstances of the offense and the history and characteristics of the defendant; the advisory guidelines range; the need to avoid unwarranted sentencing disparities; the need for the sentence to provide just punishment for the offense; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. § 3553(a). These requirements reflect the "uniform and constant federal judicial tradition of considering every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Gall v. United States*, 552 U.S. 38, 52 (2007).

## APPLICATION OF THE § 3553(a) SENTENCING FACTORS

A.  *Nature and circumstances of the offense.*

Mr. Ferro was a member of a conspiracy wherein they fraudulently obtained and spent millions of dollars in stolen cryptocurrency. Mr. Ferro executed break-ins for SE Enterprise and served as a money launderer. When he was arrested in this matter and brought before the court, he was eventually released on pretrial supervision with home incarceration. He has maintained compliance during the pendency of this case. While on bond, Mr. Ferro earned an online data science certification through Arizona State University in Tempe, Arizona.

B.  *The History and Characteristics of Marlon Ferro.*

The Presentence Investigation Report appropriately captures the history and characteristics of Mr. Ferro. Of particular note, Mr. Ferro's supervising probation officer was interviewed, and

she described Mr. Ferro as "humble," "relaxed,' "wants to help his community," and has a "good heart." PSR ¶ 68. The probation office also stated that she believes Mr. Ferro's involvement in this crime may have been due to his immaturity. *Id.*

*The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and afford adequate deterrence.*

Mr. Ferro is very cognizant of the consequences of his actions in this matter. He understands that his actions will likely result in a period of incarceration, and this scares him badly. He has been contrite and has expressed feelings of shame and disappointment. Mr. Ferro understands, however, that he has to be responsible for his actions and the repercussions. A sentence of 60 months of incarceration is significant. Undoubtedly, such a sentence demonstrates the seriousness of the offense, provides adequate punishment and promotes respect for the law. Especially for a defendant who has never spent a single night in jail.

After Mr. Ferro completes his sentence of incarceration, he must serve out a term of supervised release. As the Supreme Court itself has recognized, a term of supervised release is a consequential punishment in that it "substantially restrict[s] [an offender's] liberty." *Gall v. United States*, 552 U.S. 38, 48 (2007). As the Court noted, those on supervised release "may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from their probation officer or the court. They must report regularly . . . permit unannounced visits to their homes . . . refrain from excessive drinking," and abide by other standard and special conditions imposed by the sentencing judge. *Id*. at 48-49.

There is no question that the numerous consequences Mr. Ferro will face, as a result of his convictions, afford more than adequate general deterrence against similar conduct. The myriad of laws, rules and regulations that discriminate against ex-offenders and prevent their reintegration

into the community were poignantly described by Judge Fredrick Block of the Eastern District of New York as "a form of civi[l] death' that send[s] the unequivocal message that 'they' are no longer part of 'us.'" *United States v. Nesbeth*, No.15-CR-18 (FB), 2016 WL 3022073, at *1 (E.D.N.Y. May 24, 2016) (quoting *Michelle Alexander, The New Jim Crow142* (2010). The barriers raised by ever-expanding collateral consequences, branding so many millions with the "Mark of Cain" also carry with them new and potent deterrent effect.[1]

C. *The need to avoid unwarranted sentencing disparities.*

Probation indicated in paragraph 111 of the PSR, under the heading Judiciary Sentencing Information, that during the last five fiscal years, there were 74 defendants whose primary guideline was § 2S1.1, with a final offense level 28 and a criminal history category of I. For 72 defendants, the average length of imprisonment imposed was 65 months. In paragraph 110, Probation identified the following factors in support of a variance from the applicable guidelines: Mr. Ferro's age (18 at the time he committed the instant offense), lack of criminal history and compliance while on pretrial supervision. While 60 months is slightly below the average length of sentence mentioned above, it is not such a variance as to cause unwarranted disparities.

## CONCLUSION

For the foregoing reasons, Mr. Ferro respectfully asks this Honorable Court to sentence him to 60 months, followed by a two-year term of supervised release. He also asks the Court not to impose a fine because of his inability to pay due to his impending incarceration.

                         Respectfully submitted

                         MARLON FERRO
                         By Counsel

---

[1] There are approximately 45,000 laws and rules in U.S. jurisdictions that restrict opportunities and benefits in one way or another based upon a conviction. *Nat'l Inventory of the Collateral Consequences of Convictions*, available at http://www.abacollateralconsequences.org.

*Kevin Wilson*
Kevin E. Wilson / VSB# 80033
2 Wisconsin Circle, Suite 700
Chevy Chase, Maryland 20815
(855) 749-2100
kevin@kevinewilsonlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 27, 2026, I will electronically file the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing to counsel(s) of record.

*Kevin Wilson*
Kevin E. Wilson, Esq.